## JAMES LICK v. JEROME MADDEN.

WRITS OF ATTACHMENT.—It is the duty of the Clerks of the District Courts to issue and deliver to the parties respectively, or to their attorneys, writs of attachment in the order in which the preliminary papers are presented to them, and the writs demanded.

PREPAYMENT OF CLERK'S FEES.—When the preliminary papers to authorize a writ of attachment have been presented to the Clerk, and the writ has been demanded, it is his duty to make out and deliver to the plaintiff, with reasonable diligence, the writ applied for, without prepayment of his fees, or a tender of the same, provided the Clerk fails to call for prepayment.

Lick *v.* Madden.

PREPAYMENT OF OFFICER'S FEES.—The statute which declares that "any officer *may refuse* to perform any services in a civil action or proceeding, until the fee for such service is paid," is not to be construed as prohibiting the officer from performing the service without prepayment of fees, but as permissive merely; leaving the alternatives of cash in advance or credit to his own election.

SAME.—If, when services are demanded of an officer in a civil case, he fails to demand his fees in advance, his obligation to perform the duty required is the same as it would be if the fees were prepaid or tendered in advance.

APPEAL from the District Court, Sixth Judicial District, Sacramento County.

The Court below sustained the demurrer to the complaint, plaintiff declined to amend, judgment was rendered for defendant, and plaintiff appealed.

The other facts are stated in the opinion of the Court.

*William S. Wood,* and *Winans & Hyer,* for Appellant.

Under sections one hundred and twenty and one hundred and twenty-one of the Practice Act, the plaintiff is entitled to the immediate issuance of a writ of attachment on complying with the requirements of the law in this particular, and the Clerk is required to issue the writ immediately, and by omitting so to do the law renders him liable for all damage sustained by his omission, whether it was caused by negligence or fraud on his part. The statute is clear, providing that upon the compliance by the plaintiffs with its requirements the writ shall issue. The Act authorizing writs of attachment was passed for the purpose of enabling the vigilant and active creditor to obtain the advantage due to his vigilance and activity.

The second point raised by the demurrer is thus stated: If a Clerk is required to issue attachments in the order in which they are demanded, must his fees be tendered at the time the demand is made?

Is a tender of the fees necessary? We most earnestly contend that it is not. From what source originated the idea that it is, we are wholly unable to determine. It surely is not made so by statute. That of 1857 was in force at the time of

acts complained of by plaintiff, and it is therein provided that such fees are allowed to the officers therein named, for their services rendered in discharging the duties imposed by law, as therein authorized, and such officers "*may lawfully charge, demand and receive the same.*" (*Parker and Wife* v. *McGaha,* 13 Ala. 344; *McRae* v. *Inzan,* 4 Ala. 286; *Rutherford* v. *Jones,* 12 Geo. 618.)

*E. B. Crocker,* for Respondent.

The law does not make it obligatory upon the Clerk to issue writs in the order in which the actions are commenced.

The sections of the statute referred to by appellant in his brief, do not touch the point. To be sure, the Clerk is liable for every "wrongful act or omission" on his part, but the very point here is—Was he guilty of any wrongful act?

Suppose A. commences his action against C., and applies for an attachment, with a complaint which takes half a day to copy. The Clerk does his duty by immediately handing his papers to a deputy to prepare the proper copy and writs, with orders to deliver the writs as soon as the proper papers are completed. Suppose, the next minute, B. commences his action against C., with a short complaint which takes only a few minutes to copy, or with the proper copy already made out, and only requiring the signature of the Clerk to be issued, as many accurate lawyers do; the Clerk hands the papers to a deputy without delay, and they are immediately ready to be issued, and that, too, before A.'s papers are ready. Now, is there any law or reason why B. should wait half a day until A.'s papers are prepared? If the Legislature had intended that such should be the rule, they would undoubtedly have provided for it by statute. As they have laid down such a rule for the County Recorder, and have omitted it in the case of the County Clerk, it shows that it was intentionally omitted as to the latter.

Before the Clerk can be put in default, it must be averred that his legal fees were tendered him for his services required,

and there being no such averment, the complaint is fatally defective.

"Any officer may refuse to perform any services in a civil action or proceeding *until the fee for such service is paid by the party requiring the service*." (Wood's Dig. 446, sec. 40.)

The Clerk is only bound to furnish copies, or writs, or papers in his office, *upon the tender of his legal fees.* (*Edmondson* v. *Mason*, 16 Cal. 388 ; *People* v. *Harris*, 9 Cal. 571.)

By the Court, SHAFTER, J.

This is an appeal from a judgment rendered by the District Court on a demurrer to the complaint.

The complaint shows that the defendant Madden was County Clerk of Sacramento County, and acting as such on the 10th day of January, 1861 ; that on that day the plaintiff commenced suit in the District Court of the Sixth Judicial District in and for the City and County of Sacramento, of which Madden was Clerk, against C. Ihmels, G. Reinecke and C. Stockfleth, to recover the sum of one thousand six hundred and twenty-eight dollars.   The complaint as amended then continues : " And thereupon he duly prepared, executed and filed in the office of the Clerk of this Court, to wit : of the said defendant Madden, County Clerk as aforesaid, the necessary and proper affidavit and undertaking prescribed by the statute in such case made and provided, to authorize the issuance of an attachment, and likewise delivered the same to said Clerk, to wit : the said defendant Madden ; and further, duly and fully complied with all the requirements of law and of the statute in such case made and provided, which entitled him to require from the said Clerk the immediate issuance of a writ of attachment by said defendant Madden, as Clerk aforesaid, in said suit, for said amount of one thousand six hundred and twenty-eight dollars, against the property of said Ihmels *et al.*, directed," etc.   And that he did then and there demand the immediate issuance of such attachment.

The complaint further avers, " that said defendant, not-

withstanding the facts aforesaid, did wrongfully and unlawfully issue unto Eggers & Co. a writ of attachment against the property of said Ihmels *et al.*, in a suit began by them subsequently to the beginning of plaintiff's action and the filing of his affidavit and undertaking, and after his demand for an attachment as above stated. That by reason thereof plaintiff was delayed in delivering his writ of attachment to the Sheriff, and said Eggers & Co. obtained priority over him, and that sufficient was realized from the property of Ihmels, at that time already attached, to have satisfied plaintiff's claim, but that he never received anything on account thereof except about two hundred and eighty-seven dollars."

Two questions arise upon this record: First—Is a Clerk required to issue attachments in the order in which the preliminary papers are presented and the writs demanded? Second—If he is, then can the demand be considered as having been made, and can the Clerk be compelled to deliver such writ of attachment, until the fees have been tendered therefor, though the Clerk fails to call for prepayment?

1. Is a Clerk required to issue attachments in the order in which the preliminary papers are presented, and the writs demanded?

Section nine of the statute defining the duties of County Clerks (Wood's Dig. 88) provides " that for any wrongful act, or any omission to perform any duties imposed upon him by law, the Clerk shall be liable on his bond to any person injured."

The one hundred and twenty-first section of the Practice Act provides that " the Clerk shall issue the writ of attachment upon receiving an affidavit by or on behalf of the plaintiff, which shall be filed," showing certain facts thereafter stated in the section.

As we construe this section, it requires the Clerk, after the proper papers have been presented, to proceed with reasonable diligence to make out and deliver to the plaintiff the process applied for. The section does not regulate the time within which the writ must be made out, as between the

Clerk and the *first* applicant merely, but as between himself and all applicants; and the rule of reasonable time established by the section enures to the benefit of one applicant as much as to the benefit of another.

But the *gravamen* of this action is not that the defendant violated the rule of official duty, established by this section, by nonfeasance—that is, by simple neglect to make out the process applied for in reasonable time. The complaint, on the other hand, makes, or undertakes to make, a case of official malfeasance — the wrongful act consisting in the defendant's issuing an attachment to Eggers & Co., under the circumstances which the complaint details, and in derogation of the plaintiff's better right.

This action was brought upon the theory that the Clerk is bound to issue attachments in a certain order—that is to say, in the order in which they are applied for. Into this theory reasonable diligence does not enter as a condition; and as section one hundred and twenty-one of the Practice Act is confined to reasonable diligence as a topic, then if the order claimed by the plaintiff exists as a rule of law, it must exist independent of that section regarded as an isolated provision.

In determining, however, whether the rule contended for by plaintiff is established in this State by statute regulation, all the legislation bearing upon the question should be considered, and particularly the whole of that portion of the Practice Act which bears upon attachments as a subject matter.

The portion of the Practice Act referred to contains twenty-one sections; they are all in *pari materia,* and are to be construed together in order to ascertain the intention of the Legislature on the point in controversy. It is apparent, in the first place, that the Legislature intended that the creditor upon whose process any property, whether real or personal, was first attached, should thereby acquire the right, as against all subsequent attachments, to insist that the avails of the property should be appropriated to the satisfaction of his judgment in the first instance. This is the result that the Legislature had in mind; and the priority thus conceded and

secured to the first attachment, proceeds upon the policy that the laws should subserve those who subserve themselves.

Assuming that we have not mistaken the end to which the legislation upon the subject of attachments is directed, the sections referred to are to be so construed, that the legislative purpose may be accomplished.

If Clerks are not subject to the rule insisted upon by the plaintiff, then they are restrained by no rule; and if unrestrained, then they are left free to issue attachments as their caprice, favoritism or interested views may dictate. The purpose of the Legislature was that the first should be first, and that the last should be last; but under the view presented for the respondent, a mere ministerial officer, in a most responsible, but still subordinate position, could at his pleasure defeat the legislative design and still be held to have done no wrong. The cases in which Legislatures have ordained particular ends, and appointed and salaried ministerial agents to secure them, and have at the same time exempted those agents by intention from all liability both criminal and civil on account of studied and successful efforts to defeat those ends, must have been of very rare occurrence. If such an instance should occur in fact, a well understood rule of construction would forbid the Courts from recognizing the *felo de se,* unless, indeed, its existence should be established to the highest degree of moral certainty.

But there is another consideration connected with the question with which we are dealing.

When attachments have been issued they are delivered to the Sheriff. Is he bound to serve the writs in the order in which they come to his hands, or has he the right to shuffle and serve them as he may choose? On the reasoning of the respondent the immunities of the Sheriff in the matter of serving the writs must be co-extensive with those of the Clerk in the matter of issuing them, for no particular order of service is directed by any positive provision.

We close the discussion of the case, in so far as it relates to this question of construction, by remarking, that though the

respondent is right in saying that there is nothing in the statutes which denies to him, in terms, the irresponsible power which he claims, still it is equally true that no statute provision expressly confers the power upon him. The thing, then, stands upon implication, and we must imply that which will uphold, rather than that which must defeat the principal purpose of the Act.

Should it be assumed, however, that the order in which attachments are to issue is not established in this State by statute regulation, the question, before being finally disposed of, should be examined in the light of the common law.

It may be admitted that the office of County Clerk as it exists in California is a statute creation, but it would not follow that any incumbent of that office held it free of the maxims and pervasive analogies of the common law. The incumbent of the office stands in a public relation, and that relation, how new soever in the circumstance, is not new to the common law in its principle. The defendant as a public officer was bound, amongst other things, to respect the preemptive right which the plaintiff had acquired to the people's process as against Eggers & Co. and all others, under the common law maxim, " *qui prior est in tempore potior est in jure.*" All the facts of the plaintiff's prior right were fully known to the Clerk, and he could have had no right to do a wrong by defeating it. It was on these common law views that the cases reported in 1 Bibb, 311, 6 B. Mon. 415, 7 B. Mon. 544, and 2 J. J. Mar. 422, were decided. Under this aspect of the matter, the duty of County Clerks to attend to attaching creditors in the order in which their applications for process are presented, is in no sense a mere regulation of office, but a legal obligation, binding alike upon all men, whether in public or private stations, to refrain from violating the rights of others, and when specifically charged with the duty, then to aid actively in promoting and fulfilling them. And that duty they may very well be called upon to perform without legislative suggestion, when, as here, it lies embedded in the ethics of the common law.

27

It is suggested, on behalf of the respondent, that if applicants for attachments are to be served in the order of their applications, then, if the complaint of the first applicant should happen to be of great length, subsequent applicants would be delayed, and perhaps to their serious detriment.

The answers to this objection are multiplied and apparent.

First—The objection is, that the rule is not absolutely faultless; but there is no rule of man's making that is.

Second—A long complaint in an attachment suit must be of very rare occurrence, and under the Practice Act, as it now stands, it is not altogether certain that a copy of the complaint should go with the summons, in order that the attachment may be valid.

Third—The objection is founded upon considerations of convenience, and they are of but little argumentative weight, except in the last resort.   However, were long complaints in attachment suits of much more frequent occurrence than they are, or are likely to be, the mind can readily reconcile itself to all the inconveniences resulting therefrom, in view of the general unsteadiness of movement in the workings of the rule for which the respondent contends—steady, as it would be, in nothing, except in its tendency to corruption.

2. Assuming, then, the rule claimed by the appellant, is the Clerk under obligation to make out and deliver the writ to the first of two successive applicants, in a case where the Clerk is silent upon the subject of the prepayment of fees, and no tender of fees is made?

The only statute provision to which we have been referred having any bearing upon the question is as follows: "Any officer *may refuse* to perform any services in a civil action or proceeding until the fee for such service is paid by the party requiring the service." (Wood's Digest, 446, sec. 40.)

In the understanding of the respondent the filing of the preliminary papers, coupled with a request that a writ of attachment may issue, imposes no obligation upon the Clerk, unless the request is accompanied with a present tender of fees— while in the understanding of the appellant, the obligation of

the Clerk is perfect without a tender, if prepayment is not demanded.

The controlling words are "*may refuse.*" The intention was not to *prohibit* the Clerk, in a matter of mere personal concern, from rendering official aid on credit.   The word "may," in the connection in which it stands, is not to be considered as mandatory to the Clerk, but permissive, leaving the alternatives of cash or credit to his own election.   Again, the word "refuse" is used in contradistinction to silence, or mere omission, or neglect.   The distinction is one lying between action on the one hand and non-action on the other.   If the Clerk, in view of the alternatives presented to him, makes up his mind to stand upon prepayment, the mental state is not in itself a *refusal* of credit.   The conclusion of the mind antedates the refusal, and leads to it; but it is neither identical with it nor is it any part of it.   It is only in the event of an announced refusal of credit that the applicant, under the adjustments of the section, is required to tender.   To hold that the silence of the Clerk is an equivalent antecedent to the duty to tender, would be to interpolate into the section a new and substantive provision.   The section, in short, confers upon the Clerk a personal privilege, which he may claim or waive, as he chooses.   If he claims it he should announce it; and if he does not so announce he must be understood to have waived it.   The statute nowhere provides that the Clerk shall not be obliged to move until his fees, whether asked for or not, have been tendered.   Doubtless, under a provision like that, the *role* of the Clerk would be a passive one altogether.   But under the law as it stands, after application for process has been made in due form, something is to be done before any exhibition of money is contemplated.   The character of the initial act is clearly defined, and the function of performing it is as clearly devolved upon the Clerk.

The case of *People* v. *Harris*, 9 Cal. 571, turned upon the six hundred and twenty-seventh section of the Practice Act. By the very terms of that section, the duty of the Justice to transmit a certified copy of his docket, etc., to the County

Court, in cases of appeal, does not attach, except upon payment of his fees. This section is expressed in language differing widely from that used in the section we have been considering.

The case of *Edmondson* v. *Mason*, 16 Cal. 386, cited by the respondent, has no appreciable bearing upon the point in controversy.

The judgment is reversed and the cause remanded, with leave to the defendant to answer in ten days after notice of filing remittitur.